## GULF ENERGY AND DEVELOPMENT CORPORATION, Petitioner,

v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### No. 78-2185.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 7, 1980.

Decided Feb. 14, 1980.

Francis J. McShalley, Washington, D. C., with whom John T. Ketcham, Phil W. Jordan and James S. D. Eisenhower, III, Washington, D. C., were on brief, for petitioner.

Rhodell G. Fields, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Howard E. Shapiro, Sol., Federal Energy Regulatory Commission, Washington, D. C., was on brief, for respondent.

Before TAMM and MacKINNON, Circuit Judges and OBERDORFER,* United States District Judge for the District of Columbia.

Opinion for the Court filed by District Judge OBERDORFER.

OBERDORFER, District Judge.

Petitioner, Gulf Energy & Development Corporation ("Gulf") is here seeking relief from an order of the Federal Energy Regulatory Commission that Gulf refund to customers amounts it has collected to compensate it for the amortized cost of its 1962 acquisition of the stock of Natural Gas Gathering Company, Inc. ("NGG"), a wholly-owned subsidiary of Delhi-Taylor Company. The Commission ordered the refund because it agreed with an administrative law judge's "essential" finding that Gulf had failed to satisfy its burden of proving that "excess of acquisition cost over the depreciated original cost produced consumer benefits in the form of reduced rates or. improved service" pursuant to the principles established in *United Gas Pipeline Co.*, 25 FPC 26 (1961).

The Commission's ruling here and the *United* case which it follows correctly apply the statutory formula that the burden of proof that an "increased rate or charge is just and reasonable shall be upon the natural gas company . . . ." 15 U.S.C. § 717c(e). The Commission also asserts correctly that the finding of the Commission as to the facts "if supported by substantial evidence" is "conclusive" here. 15 U.S.C. § 717r(b). The "essential" finding here, however, is simply that the gas company failed to carry its burden of proof. In the circumstances, we are unable adequately to test that finding against the record to identify the items of substantial evidence which support the finding. Accordingly, we reverse and remand the order for further proceedings.

I

The facts and proceedings which bring us to this conclusion may be briefly stated. In

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1960, Gulf and NGG entered into an arrangement[1] to gather gas from a small field in west Texas and pipe it to an interstate pipeline company. In 1962, new gas was located approximately 14 miles from their line. Gulf was interested in expanding the line to serve the new field; NGG was not. Thereafter, in 1963, Gulf purchased all of NGG's stock for $1.5 million, an amount substantially in excess of $131,567, the equity of NGG stockholders at the time. In 1966, Gulf and NGG merged. Meanwhile, after the stock acquisition and before the merger, Gulf expanded its line to serve the new field.

Initially, Gulf made no effort to include this acquisition cost in its rate base, ostensibly because its rate was limited by a long-term contract with the interstate pipeline. In 1974, however, after Gulf had substantially amortized that cost, it applied for a rate increase based in part on recovery of the unamortized balance.

During extensive hearings before an Administrative Law Judge, Gulf offered documentary evidence and oral testimony about its reasons for acquiring the NGG stock. The Commission staff apparently elected not to offer rebuttal testimony. At the conclusion of the hearings, the ALJ wrote an elaborate opinión explaining his decision to disallow the rate increase based on the acquisition cost. He reached this decision despite his statement in the opinion that the expanded line plainly benefitted consumers because "whatever means did and does in fact bring out the added supply from the new fields . . . is entitled to the accolade of public benefit. That is no problem." (R. 501; J.A. 265). The opinion also stated quite emphatically that the price Gulf paid for the NGG stock was, in his opinion, excessive. And the opinion posed, but never answered, the ultimate question:

> Just why, for Gulf to build the added 15 or 20 miles of line, was Gulf *required* to buy out their co-owner and pay Delhi nearly six times [its] net worth.

(R. 502; J.A. 266). For partial answer, however, the opinion stated good and substantial reasons for Gulf's decision at least to make the acquisition:

> . . . *[I]f* there be accepted on its face Gulf's present description of its situation in 1963 and why it did what it did, there can or could be acknowledged as approved, q. e. d., (a) that the expansion was obviously of great benefit to the consumers, (b) that the expansion depended on the acquisition and could not have been managed without it, (c) that the exorbitant price exacted by Delhi was not an irrational cost, in Gulf's odd situation, and (d) that it would not be unjust for the rate-payers now to share in this final, remaining one-third of the amount not yet written off and absorbed by Gulf.

(Emphasis in original) (Footnote omitted) (R. 503, J.A. 267)

The ALJ observed that "[i]f all this had come up in 1963 or 1964," he would have found and acted on what he observed. But, finding himself "quite put out" to reconstruct what really may have happened and why, he determined that the lapse of time had imposed "an impossible burden of disproof on the staff and an impossible burden of verification on the Commission." (R. 504; J.A. 268).

In explanation, the ALJ itemized a number of inconsistencies and transparencies in Gulf's evidence. For example, sworn testimony that the stock acquisition was effected by sealed bids was later withdrawn by Gulf, and it disclosed that the sale was negotiated. There was no evidence of the value of the NGG stock or the underlying assets. The Gulf president who appeared as a witness and could have testified about the negotiations and the value of the stock was discovered, apparently by the ALJ and not by staff cross-examination, to have been a vice president of NGG at the time of the transaction and thus a potentially competent witness to critical facts not yet adduced. Other Commission records revealed to the ALJ evidence of continued activity

---

1. The legal relationship between Gulf and NGG is not clear. *See* Initial Decision On Acquisition Adjustment to Rate Base, March 8, 1977 (R. 495; J.A. 259).

by NGG's parent which contradicted representations that it was terminating its business in the area. And there were indications that, contrary to representations that the rate increase request at issue was foreclosed until 1974 by contract with the interstate pipeline, that contract had in fact been amended many times. Accordingly, the ALJ concluded:

. . . [T]he Commission is entitled to more straightforward treatment . . Gulf is not turning square corners with the government when it withholds . . for 11 years, after all chance has long since lapsed to examine and audit it adequately . . . in short, to find out surely what really happened. . . .

At this late date, the case looks fine, but there is no assurance the whole story is available even to Gulf's present personnel acting in the best of faith, and certainly not to the Commission and its inquiring Staff. The claim for the acquisition adjustment must be disallowed, not because it has been determined to be wrong, but because it is no longer possible to prove that it is right.

(R. 505–506; J.A. 269–270) (Footnotes omitted)

Thus, the ALJ recommended against recognition of the adjustment because, despite the record evidence to justify it, he had doubts about the accuracy of the proof, and considered the petitioner to be responsible for the suspicious delay in bringing the matter to issue at a time when fresh evidence was available. In addition, and perhaps more important, he obviously considered the price paid for the acquisition to be grossly excessive.

## II

We are quite sympathetic with the ALJ's reaction to all the circumstances, including what appears to be his ultimate judgment that petitioner seeks to insinuate into its rate structure an unreasonable cost, which it incurred in the course of producing an unconscionable profit to its former business associate. But, neither the ALJ nor the Commission has justified its decision by findings which are supported by the kind of substantial evidence which requires or justifies our treating them as conclusive. Nor has the ALJ or Commission tested the charge that cost of acquisition was inflated against any principled Commission standard for valuation of stock so acquired.

But a finding of cause and effect between the acquisition and the expansion or that the benefit to consumers exceeded the resulting rate increase would not compel a conclusion that petitioner is entitled to the relief it claims. As the ALJ repeatedly suggested, the acquisition may have been necessary to effect the expansion and of great benefit to consumers, but not at that price.

We conclude therefore that the Commission and the ALJ failed to make findings necessary for approval of a decision that the acquisition was not sufficiently instrumental in the expansion. Accordingly, we remand, mindful of the Commission's ultimate responsibility to protect consumers from increased rates reflecting unreasonable costs and unjustified profits.

It may be that on remand the Commission or the ALJ will conclude from a review of the record that the necessary findings are justified by the present record. Or they may reach this conclusion after affording the staff an opportunity to adduce evidence from, for example, the Gulf official who was employed by NGG at the time of the acquisition. The Commission may also conclude upon further consideration that the petitioner's claim is governed by principles of equity, such as laches, and that its failure to be prompt and forthcoming justify the ALJ's findings and conclusions. Or, of course, the Commission may find on remand none of the above, or something else.

For example, even if the Gulf decision to pay the asking price was not "irrational" from its perspective and fully benefitted consumers, the cost may still be unreasonable under established principles as an element of rates charged to consumers. Or is it an ameliorating circumstance that Gulf is only requesting that one-third of the acquisition cost be included in the rate base?

We have the strong impression that it was the discrepancy between that value and the price paid by Gulf which particularly exorcised the ALJ. Whatever may be the limitations on the ability of witnesses, counsel and the triers of fact to reconstruct the motives of the parties to the acquisition, it should not be beyond their capacity to reconstruct the appropriate value of the NGG stock at that time and to adjust the basis and the rates. Reconstruction of 20-year old values should be a familiar task to the Commission and its experienced staff. If the acquisition price was unreasonable under established principles, the Commission is obligated and well equipped, even at this late date, to state that principle and apply it here.[2]

### III

The petition is granted and the case is remanded for further consideration in light of this Memorandum.

*It is so ordered.*

---

**2.** The ALJ seemed to emphasize the fact that the price was negotiated instead of being the product of a bidding process, or some other "arms length" mechanism for establishing price fairly. We venture no opinion at this time as to the standard for calculating the appropriate value (*e. g.*, market value), except to say that it would probably be unnecessary for the ALJ to find value with the same precision that might be required in other circumstances.